M. J. O'HARA AND R. J. O'HARA, DOING BUSINESS AS
O'HARA PLUMBING COMPANY, A COPARTNERSHIP, APPELLEE,
v. FREDERICKSON BUILDING CORPORATION ET AL.,
APPELLANTS, CENTRAL SURETY AND INSURANCE
CORPORATION, APPELLEE.

88 N. W. 2d 643

Filed March 14, 1958. No. 34274.

*Robert Lloyd Jeffrey,* for appellants.

*Kelly & Kelly,* for appellee O'Hara.

Heard before SIMMONS, C. J., CARTER, MESSMORE, CHAPPELL, WENKE, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an appeal from a judgment for the plaintiff in a law action.

The plaintiff is a copartnership, and will hereinafter be referred to as plaintiff.

The defendant Frederickson Building Corporation will be hereinafter referred to as Frederickson, when required. The defendant Peerless Casualty Company, a corporation, will be hereinafter referred to as Peerless, when required. Jointly Frederickson and Peerless will be referred to as defendants, when required. Peerless is joined as surety of performance of Frederickson of a contract between plaintiff and Frederickson. During the proceedings Central Surety and Insurance Corporation was impleaded. It will be hereinafter referred to as Central.

Defendants' first two assignments of error go to the refusal of the trial court to sustain their special appearance. Frederickson was served with process in Platte County. As to Peerless, service was made on the Secretary of State under the provisions of section 21-1201, R. R. S. 1943. Frederickson appeared specially and objected to the jurisdiction of the court over its person for the reason that it had its residence and principal place of business in a county other than Hall where the suit was brought. Peerless appeared specially and objected to the jurisdiction of the court over its person for the reason that it is a nonresident corporation and that there was no proper joinder in that there was no service upon a resident defendant in Hall County.

The trial court overruled the special appearances.

Thereupon the defendants, asserting a reservation of their special appearances, moved that the petition of plaintiff be made more definite and certain. This motion was overruled.

Defendants, asserting a reservation of the special appearances, then demurred. No ruling appears thereon. Defendants, asserting a reservation of the special appearances, then answered denying generally.

Defendants then asserting a reservation of their special appearances moved for an order making Central a party on the ground that it was the surety on the con-

tract between plaintiff and Frederickson. They moved for service upon Central and asked leave to file amended answer and cross-petition against Central and plaintiff, asserting that they had affirmative defenses and causes of action against plaintiff and Central.

The motion was sustained.

Defendants, asserting a reservation of their special appearances, filed an amended answer and cross-petition against plaintiff and Central in which they sought a dismissal of plaintiff's petition and a judgment for Frederickson against plaintiff and Central.

Plaintiff and Central filed a reply and answer denying generally.

On these issues the matter went to trial.

We need not discuss the theories upon which defendants rested their special appearances.

It has long been the rule that if a defendant invokes the judgment of the court in any manner upon any question, except that of the power of the court to hear and decide the controversy, his appearance is general. Bankers Life Ins. Co. v. Robbins, 59 Neb. 170, 80 N. W. 484.

Making specific application of this rule, we have held that where a defendant files a cross-petition asking for affirmative relief, it constitutes a general appearance and gives the court jurisdiction of the person of the cross-petitioner. Linton v. Heye, 69 Neb. 450, 95 N. W. 1040, 111 Am. S. R. 556; Edgar v. Anthes, 109 Neb. 546, 191 N. W. 682; Pollard v. Larson, 115 Neb. 136, 211 N. W. 998.

The defendants' assignment is not sustained.

This brings us to the assignments of error which involve the merits of the causes.

Plaintiff sought judgment on two causes of action. The first was for the balance due on a contract whereby plaintiff agreed to furnish material and labor on a contract to install plumbing. The balance alleged to be due was $27,290. The second cause of action was for

extras furnished in connection with the contract in the sum of $915.95.

Defendants by answer denied generally.

By cross-petition defendants sought judgment against plaintiff and Central in the sum of $106,789.65. This in turn was divided into two classifications: The claim in the amount of $103,914.10 consisted of 11 items of damage allegedly suffered by Frederickson in connection with plaintiff's performance of the contract. The second classification was for items of material and labor furnished plaintiff by Frederickson for which credit was not given. The amount here claimed was $2,875.55.

The issues were tried to the court, a jury being waived.

The trial court in its judgment allowed recovery by plaintiff on substantially its entire claim in its two causes of action. The judgment for plaintiff was for $24,-238.14, with interest. The amount of that allowance is not questioned here. The court further allowed Frederickson credit for the amounts claimed by it as damages in items 1 and 3 of its first classification and the amount claimed by it for material and labor furnished in the second classification. Those allowances are not in dispute here.

The issue involved in the appeal here goes to the denial of the court of items 2, 4, 5, 6, 7, 8, 9, 10, and 11, claimed by Frederickson as damages.

Defendants here offer 22 assignments of error. We have determined the first two above.

The next 18 assignments charge error in overruling a motion for a new trial; irregularities preventing a fair trial; abuse of discretion; the judgment is contrary to law and contrary to the preponderance of the evidence; errors of law occurring at the trial; error in the exclusion of evidence in support of three items of alleged damages; error in failing to award damages to the full extent thereof; error in plaintiff offering evidence of negotiations concerning settlement; and error in fail-

ing to find for the defendants on each of 9 items of damages set out in their cross-petition.

Defendants elect to argue these assignments together —and do so.

Frederickson was the prime contractor with the United States government on this project. There was a clause in that contract providing for liquidated damages of $100 a day for delay in performance. Under this clause the United States government withheld payments of $9,300 for a time. Frederickson and plaintiff had a like clause in their contract. Under it Frederickson withheld $7,900 for 79 days' delay allegedly due to plaintiff's failure to perform as agreed. After a few weeks the United States government waived the liquidated damages and paid the $9,300 to Frederickson. Frederickson then credited the plaintiff with the $7,900 charged to it.

Defendants then spend the major part of their argument on the legal proposition that stipulated damages having been waived they had the right to recover actual damages.

Plaintiff by argument contends that the liquidated damage clause controls and, liquidated damages having been waived, defendants can collect no damages by reason of failure to complete the contract on time, and that in any event damages cannot be allowed which are uncertain, conjectural, or speculative.

Defendants then spend two pages of their brief reciting alleged facts of the nine items as set out in their cross-petition. With one exception, there is no reference to sustaining testimony as required by our rules 8a2(6), 8a2(7), and 8a3(3).

Nevertheless we have read the entire testimony covering 4 days of trial. We have found evidence that apparently relates to various items of the claimed damages. With few exceptions no reference was made to the item number in the testimony so as to connect the testimony with the claim. In some instances there

is a failure to prove an essential element necessary to the calculation of damages; in some instances there is a failure of proof showing plaintiff's liability in the event damage followed; in at least one instance we found no reference to one of the items of claimed damage; and in at least three instances we found neither facts nor law to sustain the claims.

We agree with defendants in the rule stated from Lee v. Carroll Normal School Co., 1 Neb. (Unoff.) 681, 96 N. W. 65, that a party who claims to have been damaged by a breach of a contract is required to prove the amount of his damage when that is an issue. It was an issue here.

It is axiomatic that a party who claims to have been damaged by a breach of a contract is required to prove that the person sought to be charged is liable therefor, when that is an issue. It was an issue here.

It is also axiomatic that a party who claims error in a proceeding is required to point out the factual and legal basis that shows error. Here defendants do not do so. Our research does not disclose error.

Defendants say that it is difficult to understand why the court found for it on items 1 and 3 and failed to do so on items 2, 4, 5, 6, 7, and 8. Without designating it by item number, defendants here "for example" discuss item 2. This is for graveling roads to make them usable during the winter months. Here the liability of plaintiff is assumed. The claim is for 11,800 square yards of gravel, requiring 980 cubic yards of gravel delivered and spread at $2.15 per cubic yard. The sum claimed is calculated on 980 cubic yards at $2.15 per cubic yard.

Frederickson's principal officer and witness testified that he did not know how much gravel was used and that he did not recall the exact cubic yardage, but that they covered between 11,000 and 12,000 yards. The theory of defendants was that this was necessary because of the delay in paving, yet Frederickson testified that

they spread gravel over all the roads and loading aprons. There was no attempt to limit the items in the testimony to those areas where plaintiff was alleged to have some liability.

The task of defendants here is not to understand why the court found against them on the items named, but to demonstrate why the court should have found for them. That they have not done.

Defendants make brief argument as to certain items, to wit, 9, 10, and 11. Item 9 is a claim for damages in the sum of $1,180 because the paving contractor could not commence work in the fall of 1952 and the work was done in the spring of 1953 at an increased cost of 10 cents per square yard, being the difference in cost of $2.15 per square yard and $2.25 per square yard. There is ample evidence in the record to sustain the conclusion that the weather became too cold in the fall and winter of 1952 to permit paving, during the time that plaintiff was not in default of the performance of its contract. The evidence with reference to the $2.15 per square yard figure is that in the fall of 1952 a paving contractor got in touch with Frederickson and offered to do the paving for $2.15 per yard but that a contract was not made until 1953. The trial court pointed out this deficit in the evidence in this regard to the defendants. Although considerable evidence was received thereafter we find no further reference to the matter.

Defendants do not undertake to point out here on what basis plaintiff would be liable for the damage in any event.

Item 10 was a claim for $2,917.44 for interest on the liquidated damages and other retainages withheld by the United States, and collection expense and attorneys' fees in the sum of $667.87. As to the last item we find no evidence whatever.

As to the interest item, Frederickson offered its calculation known as exhibit No. 22. This shows that the liquidated damages were withheld at the rate of $100

a day beginning on December 11, 1952, continuing for 93 days; and that on May 5, 1954, Frederickson was paid the sum of $9,300. Defendants calculate interest on that sum for that period at 6 percent to be $853.05.

We are unable to calculate the interest so as to reach that sum.

Defendants then calculated 6 percent interest on "other than Liquidated Damages deduction" and reached a total in this category of $2,064.39. There is no showing as to what this involves and any possible liability of plaintiff to pay it. Defendants, without citation to the record, tell us in their brief that the total of $2,917.44 is the amount of interest which Frederickson was obliged to pay to its bank. Again we find no evidence of that in the record and no showing of any legal basis upon which to base a liability of the plaintiff.

Item 11 is for the "Loss of normal profit" on the contract alleged to have been caused by plaintiff's negligence and delay in performance in the sum of $68,832.95.

To sustain this item Frederickson offered an analysis of its gross profits on contracts for 5 years and on two other contracts with the United States. On one of these latter contracts it made a gross profit of 13.255 percent. It calculated 13.255 percent of $519,297.69 listed as the "gross sales" in this contract and arrived at the amount of $68,832.95 as its loss of profit on this contract. It showed no loss otherwise. It appears to be Frederickson's theory that because it made gross profits on its other contracts, it should have done so on this one and that plaintiff is obligated to make up the alleged loss. Defendants advise us that the trial court "had difficulty in understanding" this exhibit. We have the thought that the trial court understood the exhibit but had difficulty in understanding upon what possible theory it could be used as the foundation proof for the damages claimed. We are of like mind.

In Ballmer v. Smith, 158 Neb. 495, 63 N. W. 2d 862, we restated the rule that: The general rule is that

damages, to be recoverable, must be direct and certain.

Stated otherwise, the rule is that damages which are uncertain, contingent, conjectural, or speculative, cannot be made the basis of a recovery, whether applied to the existence, nature, or proximate cause thereof. Bitler v. Terri Lee, Inc., 163 Neb. 833, 81 N. W. 2d 318.

Those rules control here.

Finally defendants by two assignments of error assert bias of the trial court, a misconception and a narrow view of the issues and of rulings on the admission of evidence, and other matters of like nature. Perhaps the approach of defendants to those assignments of error is best illustrated by the assertion in the brief that the case was being tried 4 years after the events being inquired into had taken place; that its burden of proof "was a heavy one"; and that Frederickson should have had a wider latitude in the presentation of its case "quite apart from the fact that a foreign insurance company and a non-resident contractor were the defendants against a local subcontractor."

The record of this case is that of a patient trial judge carefully granting to all the parties a full and fair hearing on the issues presented by them according to the established rules of procedure and evidence. We find no basis for a charge of bias or prejudice or prejudicial result in the trial of the case.

The oblique inference of improper motives on the part of the trial judge is without merit.

The judgment of the trial court is affirmed.

AFFIRMED.

YEAGER, J., participating on briefs.