**Thelma Agnes CEMINSKY, Respondent,**

v.

**Sarah Currie MARDELL, Appellant.**

**No. C4–85–1915.**

Court of Appeals of Minnesota.

April 29, 1986.

Review Denied June 30, 1986.

Randall W. Brooks, Eagan, for respondent.

John E. Hennen, Apple Valley, for appellant.

Considered and decided by POPOVICH, C.J., and LANSING and HUSPENI, JJ., with oral argument waived.

## OPINION

LANSING, Judge.

Sarah Mardell appeals from an order enjoining her from attempting to collect attorney's fees from Thelma Ceminsky. We affirm the trial court's ruling that the court had personal jurisdiction over Mardell and decline review of the other issues presented on appeal.

## FACTS

This unfortunate dispute between an attorney and client over $382 in attorney's fees has a complex history. In 1983 Sarah Mardell, an attorney, performed legal services for Thelma Ceminsky. Mardell's fees amounted to $1,642. Mardell sued Ceminsky in Dakota County conciliation court to recover $1,250 in fees, that amount being the jurisdictional limit of the conciliation court. *See* Minn.Stat. § 487.30, subd. 1 (1984) (later raised to $2,000, *see* 1985 Minn.Laws ch. 149, § 1). In June 1984 Mardell received a judgment for $1,260.

In August 1984 the parties signed a written contract, drafted by Mardell, in which

Ceminsky agreed to pay $75 per month "until her bill for legal services and costs is paid in full." The agreement did not specify the total amount due. The agreement provided that Mardell would refrain from garnishing Ceminsky's wages so long as the contract's requirements were met.

■ By May 1985 Ceminsky had satisfied the judgment. Mardell, however, claimed that under the contract Ceminsky owed her the full amount of legal fees, approximately $382 more. Mardell sent Ceminsky's attorney a letter asking where Ceminsky was employed and threatening to send the sheriff to levy on Ceminsky at home. On July 22, 1985, Mardell sent a garnishment summons to Ceminski's employer, claiming Ceminsky owed her $443.[1]

Ceminsky obtained an ex parte temporary restraining order (TRO) and order to show cause from the trial court on August 13, 1985. The TRO restrained Mardell from attempting to collect any money or property from Ceminsky "or otherwise harassing" her until the hearing on the preliminary injunction. Ceminsky served Mardell with the TRO and order to show cause, along with a summons and complaint[2] and a notice of motion and motion for preliminary injunction, by handing the documents to Mardell's paralegal at Mardell's law office. The paralegal informed the process server that Mardell was out of town.

Mardell answered the complaint and asserted a counterclaim against Ceminsky for defamation and abuse of process. She alleged that Ceminsky had defamed her by making untrue statements to the Lawyers Board of Professional Responsibility and to officials of the Dakota County courts. Mardell in addition brought a third-party complaint against Ceminsky's lawyer, Randall Brooks, for defamation and abuse of process.

On August 29 both parties' attorneys appeared at the preliminary injunction hearing. Mardell moved for dismissal on the basis that the TRO and order to show cause were improperly served, and the trial court therefore lacked jurisdiction over her. The court denied the motion and on September 11, 1985, issued a preliminary injunction restraining Mardell from

any attempts to collect any money or property from * * * Ceminsky or otherwise harassing [her] from any cause of action arising from [her] retention of Sarah Currie Mardell during the pendency of this action.

Mardell filed a notice of appeal from this order on October 14, 1985, contending the trial court lacked jurisdiction over her and abused its discretion in granting the TRO and the preliminary injunction.

Mardell posted a cost bond and moved the trial court for an order waiving a supersedeas bond. On October 29 the trial court issued an order stating:

1. [Mardell's] appeal of the * * * order for preliminary injunction shall stay proceedings of the trial court upon said order.

2. A supersedeas bond is not required to effect such stay.

3. The stay does not affect the trial court from considering the merits of the case, included but not limited to, a motion for judgment on the pleadings, a motion for summary judgment or trial.

On November 21, 1985, the parties appeared for a hearing. After the hearing, the trial court issued an order dated January 7, 1985, permanently enjoining Mardell from attempting to collect legal fees from Ceminsky, ordering entry of a satisfaction of judgment on the conciliation court judgment, and awarding Ceminsky $500 in attorney's fees. The order also dismissed the counterclaim and third-party complaint

---

1. This attempt to garnish Ceminsky's wages before obtaining a judgment for the claimed $382 was clearly in violation of the pre-judgment garnishment statute, see Minn.Stat. § 571.41, subd. 2 (1984), subjecting Mardell to liability for attorney's fees and costs under § 571.67.

2. The complaint, liberally construed, states a cause of action for abuse of process. See Bigelow v. Galway, 281 N.W.2d 835 (Minn.1978).

with prejudice. Judgment was entered, and Mardell filed a second appeal.

## ISSUES

1. Did the trial court have personal jurisdiction over appellant?

2. Did the trial court abuse its discretion in granting the TRO and preliminary injunction?

## ANALYSIS

### I

Mardell contends the trial court lacked personal jurisdiction over her because service of process was insufficient.

In Mardell's answer she alleged as an affirmative defense that the court "lacks jurisdiction to hear this matter due to insufficiency of service of process." In the trial court she argued only that service of the TRO and order to show cause was insufficient because they were served on her paralegal instead of herself. She argues in her reply brief to this court, for the first time, that service of the summons was insufficient to confer personal jurisdiction. Minn.R.Civ.P. 4.03(a) requires either personal service or substituted service at the individual's "usual place of abode."

■■■ We conclude, however, that Mardell waived any objection to service of the summons by failing to raise the issue at trial. *See Alger v. Hayes,* 452 F.2d 841, 844 (8th Cir.1972). In addition, she waived the issue by asserting a counterclaim and third-party complaint against Ceminsky's lawyer. *See Morehart v. Furley,* 149 Minn. 56, 57, 182 N.W. 723, 724 (1921) (by asserting a counterclaim the defendant "voluntarily invoked the power of the court in his own behalf, and thereby gave the court jurisdiction over him."). The trial court properly asserted personal jurisdiction over Mardell.

■■■ The TRO and order to show cause, by its own terms, required personal service upon Mardell. There is no dispute that she was not personally served. However, Minn.R.Civ.P. 65.02(1) provides:

No temporary injunction shall be granted without notice of motion or an order to show cause to the adverse party.

Mardell received notice of the motion and does not challenge the service of the notice of motion and motion. Because she received notice, the failure to personally serve the TRO and order to show cause does not remove the court's jurisdiction or affect its power to impose the preliminary injunction.

### II

■■■ Mardell asserts that the trial court abused its discretion in granting the TRO and preliminary injunction. Injunctive relief is not typically requested in debtor-creditor situations because of the absence of irreparable harm and the existence of a legal remedy. However, the trial court subsequently granted a permanent injunction, and Mardell has taken a second appeal from that ruling. Because a permanent injunction is in effect, review of the TRO and temporary injunction would not affect the outcome of this controversy. *See Renzaglia v. Chipman,* 298 Minn. 384, 385, 215 N.W.2d 477, 478 (1974) (the court will not pass on questions that make no difference in the outcome of a judicial controversy). The arguments on the propriety of issuing injunctive relief are more fully developed in the second appeal. Furthermore, the slight delay in obtaining review through the second appeal will cause no discernible harm to Mardell. We therefore decline review now in the interests of prudence and judicial economy.

## DECISION

The trial court properly asserted personal jurisdiction over Mardell. We decline to review the other issues presented.

Affirmed.